STATE of Missouri, Respondent,

v.

Jewell DONAHUE, Appellant.

No. WD 32183.

Missouri Court of Appeals,
Western District.

Dec. 8, 1981.

James L. McMullin of McMullin, Wilson & Schwarz, Kansas City, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

Before MANFORD, P. J., and DIXON and NUGENT, JJ.

MANFORD, Presiding Judge.

This appeal follows a conviction for murder second degree in violation of § 565.004, RSMo 1978. The jury affixed punishment at 50 years confinement in the Department of Corrections. The judgment is affirmed.

One point of error is presented, which in summary alleges the trial court erred in refusing to grant appellant's motion for acquittal because the inconsistent and uncertain testimony of a prosecution witness rendered the evidence, as a matter of law, insufficient to sustain a conviction of guilt.

Appellant attacks the sufficiency of the evidence, necessitating recital thereof. On July 17, 1979, at about 11:40 p.m., police officers were ordered to a multi-dwelling residence with the street address of 3214 Olive, Kansas City, Missouri, in response to a shooting call. Upon arrival, the officers found the victim, Reuben Cruise, lying in the front yard. The cause of death, later confirmed by autopsy, was a shotgun wound to the left side of the neck. Prosecution witness Spencer Walker testified that he had known appellant for several months. Walter testified that he (Walker) was a resident at 3214 Olive, occupying a third floor apartment. He related that on the night of the murder, he returned a call to appellant at about 9:30 p.m., and appellant told him that he was coming to his (Walker's) residence that evening. At about 11:00 p.m., Walker heard the front doorbell to the apartment dwelling ring,

went downstairs, and observed the manager, Sarah Sabrina Edwards, admitting appellant into the corridor. Sarah Edwards returned to her own apartment, and appellant and Walker walked out onto the front porch to talk. During this conversation, appellant told Walker that he could not understand why Reuben Cruise had given his name to the police in connection with an earlier burglary of Sarah Edwards' apartment.

Walker testified that after making this remark, appellant showed Walker a shell casing for a rifle or shotgun and said to Walker, "That this will take care of it." Walker returned to his apartment and observed appellant walk toward appellant's white Pontiac parked on the street. Appellant went around the back of the car, then proceeded to sit on the front porch steps of the house immediately north of 3214 Olive. Some five minutes later (as Walker watched), the victim walked up the street toward 3214 Olive from the south and approached the front steps (of 3214 Olive). Appellant arose from where he was sitting and called the victim by name. The victim turned around and walked toward appellant's automobile. Appellant walked to his automobile, and Walker heard the trunk lid open and close. Walker then observed appellant come from behind the automobile, carrying "a long-barreled gun" and strike the victim in the face with the gun. After this striking, the two moved toward the house at 3214 Olive and passed from Walker's sight. Walker heard the victim say, "No man. I didn't do it man", heard a click, and then a shot. Walker then looked out a front window and observed appellant looking south, holding a long-barrel gun. Appellant then fled the scene in his car.

Another prosecution witness, Sarah Edwards, who was appellant's half-sister, testified that she felt appellant had a grudge against Cruise because appellant believed that Cruise had told the police that appellant had burglarized her apartment. At one time, Reuben Cruise was Sarah Edwards' lover and these two, along with ap-

pellant, shared the same apartment. During this time, appellant had complained that Cruise was not paying his share of the expenses. On the night of the murder, after admitting appellant to the apartment complex, Sarah Edwards returned to bed and a short time later, was awakened by Cruise calling her name. After hearing her name called, she heard Cruise say, "Jerry man I didn't do it".[1] Sarah Edwards then heard the shot. She placed these events between 10:30 p.m. and 11:00 p.m.

Walker and Sarah Edwards accompanied the police to police headquarters. While there, Sarah Edwards and appellant engaged in a conversation, during which appellant told her, "Sabrina you didn't have to tell on me", to which she responded, ". . . [you] didn't have to kill him, and I was going to tell it all." This conversation was confirmed by another prosecution witness, Sarah Edwards' mother.

The defense was alibi. Appellant, in addition to his own testimony, produced four other witnesses. Three of appellant's witnesses placed him at a location other than the murder scene between 10:00 p.m. and 10:45 p.m. The time critical in this crime was between 11:00 p.m. and 11:40 p.m. Appellant's remaining witness, his girlfriend with whom he shared an apartment, testified that appellant was home between 10:30 p.m. and 1:00 a.m.

The evidence closed. The jury returned its verdict. Judgment and sentence were entered and this appeal followed.

Appellant's entire argument on this appeal centers upon his attack of Spencer Walker's testimony. Appellant contends that since the evidence shows that (a) the police were dispatched to the shooting call at 11:40 p.m. and it took approximately two minutes to arrive (11:42/11:43 p.m.); (b) Walker testified appellant arrived at the apartment at about 11:00 p.m.; (c) the shooting occurred at about 11:15 p.m.; (d) Walker placed his arrival at police headquarters at about midnight; and (e) this testimony conflicted with a written state-

1. Appellant was often times called "Jerry".

ment given police by Walker wherein Walker placed appellant's arrival at the apartment at 11:47 p.m. (Walker affixed the time by having looked at his clock), that it was impossible for him to have committed the crime. Appellant argues that since the police arrived at 11:43 p.m. and Walker's written statement to the police placed appellant's arrival at 11:47 p.m., it was impossible for appellant to have murdered the victim because the victim was dead before appellant's arrival. Appellant contends that this conflict in the evidence supports his motion for acquittal as a matter of law.

What is readily observable from the record is an obvious inconsistency in the testimony of Walker concerning applicable periods of time. Walker told the police in his statement that the time was 11:47 p.m. On trial, Walker testified that it was 11:00 p.m.

■ Appellant's argument fails. Inconsistencies in testimony are fact questions left to the determination of the trier of fact. *State v. Longmeyer*, 566 S.W.2d 496 (Mo.App.1978). An accused is not entitled to an acquittal and such inconsistencies do not render such testimony insufficient as a matter of law. The weight and credibility of such testimony is within the province of the trier of fact. *State v. Holt*, 592 S.W.2d 759 (Mo.banc 1980).

■ It is not necessary to recite the pertinent facts herein and it suffices to point out that the evidence was sufficient to support the finding by the jury. It was for the jury to assess the weight and adjudge the credibility of Walker's testimony. The testimony of Walker placing appellant at the crime scene at about 11:00 p.m. was corroborated by Sarah Williams. There were ill feelings between appellant and the victim, and appellant upon cross-examination admitted asking the whereabouts of the victim the night of the shooting. Walker testified that he observed appellant with a "long-barreled gun" the night of the shooting, and witnessed the confrontation between the victim and appellant.

■ The evidence offered to support appellant's alibi defense was a matter to be weighed and determined by the jury. Three of appellant's witnesses placed appellant at a different location between 10:00 p.m. and 10:45 p.m. Appellant's fourth witness and appellant's testimony placed him at his girlfriend's apartment between 10:30 p.m. and 1:00 a.m. It was the jury's prerogative to accept and believe or reject and disbelieve the whole of the evidence. Such matters are questions of fact falling within the province of the jury. Although appellant contends such, it cannot be said that his alibi evidence raised a reasonable doubt as a matter of law. Evidence as to alibi must raise a reasonable doubt in the mind of the average juror. *State v. Franklin*, 591 S.W.2d 12 (Mo.App.1979).

■ Appellant relies upon *State v. Platt*, 496 S.W.2d 878 (Mo.App.1973), a case where reversal was ordered because the jury had not been fully informed of inconsistent testimony, and *State v. Harris*, 428 S.W.2d 497 (Mo.1968), a case wherein reversal was ordered because of witness perjury. These cases are distinguishable and not controlling herein. In the instant case, there is nothing to suggest Walker committed perjury. *Harris, supra.* Nor is there anything in the instant record to suggest that the jury was not fully advised of the inconsistency of Walker's testimony. *Platt, supra.* The instant record illustrates substantial evidence to support the jury's verdict, irrespective of the inconsistency of Walker's testimony regarding the applicable time. The weight and credibility of that testimony and its inconsistencies were matters for the jury. There is no merit to appellant's alleged error and it is ruled against him.

The judgment is in all respects affirmed.

All concur.